18

(C. D. 414)

Helen M. Danforth v. United States

United States Customs Court, Third Division

(Decided January 6, 1941)

*Edwards & Angel (Edward Winsor* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel I. Auster* and *Daniel G. McGrath*, special attorneys), for the defendant.

Before Cline, Evans, and Keefe, Judges; Keefe, J., not participating

Cline, Judge: This is a suit against the United States in which the plaintiff seeks to recover the duty assessed on one mahogany dining table, item 3 on the invoice, which was assessed at 40 per centum ad valorem as wood furniture under paragraph 412 of the Tariff Act of 1930. It is claimed that the table is an artistic antiquity produced prior to the year 1830 and that it is free of duty under paragraph 1811.

An inspection of the invoice shows that there were five other pieces of furniture in the importation, all of which were returned free of duty under paragraph 1811. The mahogany dining table, the subject of this case, was entered and appraised at £201 0s. 0d. The invoice covers a charge for repairs of the table, reading—

Cost of adapting the three old but not original leaves including bearers and twelve brass clips reducing width and re-reeding edges at sides only, also minor repairs £9/0/0.

19

With regard to the antiquity of the table, the plaintiff offered the testimony of four witnesses taken by deposition before the United States Consul in London, England, namely, Mr. Owen Evan-Thomas, the shipper; Miss Kathleen Ethel Waring, the secretary of the shipper; Mr. Robert George Chandler Langhorn, who repaired it; and Mr. Edward Miney, who sold it to Owen Evan-Thomas, Ltd. before it was repaired. Mr. Miney testified that the table was in its original condition when he sold it to Mr. Owen Evan-Thomas but the leaves were missing. Mr. Owen Evan-Thomas testified that he sent it to Mr. Langhorn for repairs and his testimony was corroborated by Miss Waring. Mr. Langhorn testified that he received it from Mr. Owen Evan-Thomas with instructions to repair and restore it; that he reduced the width from 5 feet to 4 feet and 3 inches and reeded the edges and the pedestals; that the table had no leaves and he supplied leaves from another old table; that he replaced the brass forks holding the joints together because most of the old forks were broken; and that there was no restoration on the top of the table or on the pedestals and that the repairs did not change its original shape.

Three of the witnesses were well qualified to express an opinion as to the antiquity of the table. Mr. Evan-Thomas testified that he had been in the antique business for 40 years; that prior to starting his own business he had been supervisor of the antique department of Messrs. Trollope & Colls in which position he was a buyer of antiquities; that he is a member of the National Art Association and the British Antique Dealers Association and that he had examined antique furniture for the Royal family. Mr. Miney testified that he examined antique furniture for the British Antique Dealers Association and that he had been an antique dealer for 20 years. Mr. Langhorn testified that he has been a restorer of antique furniture for 45 years; that he appraises antique furniture for people in the trade, and for museums; that he has examined such furniture for the "Victoria and Albert, the London Museum, the National Museum of Wales, the Library at Oxford and Woodwork at Cambridge, and for most of the City Guilds." These three witnesses all testified that they believed the table was produced between 1800 and 1820, basing their opinions on its construction. It appears that the table had four pedestals and the two center ones were larger than the two outer ones. In explaining this Mr. Evan-Thomas testified as follows:

Q. Is it common for the end pedestals not to be of the same proportions as the middle ones in genuine antique tables of the kind you sold Mrs. Danforth?— A. Yes, often, for the reason that the center ones have four claws, whereas the outer ones only have three, with the object of not getting in the way of your feet when you sit at the end of the table. Therefore, they are often lighter than the center ones slightly.

The defendant called Mr. Timothy A. McCarthy, a United States examiner at the port of Boston, who had been an examiner of antique furniture for 15 years. He testified that the table was made from two tables joined together and that it did not exist in its present condition prior to 1830; that the original tables were plainly edged but when joined together they were reeded; that he based his opinion on the construction of the piece and on the hardware underneath. He stated that if the table had been made by one cabinetmaker the type of the material of the hardware would be the same. He testified further that new leaves were added.

The testimony of the examiner indicates that his opinion as to the antiquity of the table was based on the repairs and new parts which Mr. Langhorn testified he added to the table in restoring it to a serviceable condition. This labor and these parts are invoiced separately and were not entered with the table free of duty under paragraph 1811. They were entered at 40 per centum ad valorem under paragraph 412.

We are of opinion that the weight of evidence establishes that the table herein involved is an original produced prior to the year 1830 but has recently been restored and repaired by replacing some of the brass hardware at the joints, by making the top a few inches narrower and reeding the edges, and by supplying new leaves which were missing. These repairs amount to about 4½ per centum of the value of the table. In the case of *Rorimer Brooks Studios* v. *United States*, 66 Treas. Dec. 14, T. D. 47153, the court held that where repairs amount to only 2 per centum of the value of the antique they are negligible and should not be considered, but, where they amount to 5 per centum of the value of the antique, they are dutiable separately from the antique.

The defendant urges that the dining table is not artistic and therefore cannot be classified under paragraph 1811 even if it was produced prior to 1830. The defendant refers to the following portions of the testimony with the suggestion that the importer's witnesses failed to testify positively that the table was artistic:

Interrogatory 44 propounded to Mr. Owen-Thomas;

Q. Was this table sold Mrs. Danforth in your opinion an artistic antiquity?— A. As far as any dining table can be artistic, yes, for the reason that you may have a very ugly pedestal, and you may have a lighter and a better shaped pedestal. Beyond that you cannot call it an artistic antiquity.

Interrogatory 44 propounded to Miss Waring;

Q. Was this table sold Mrs. Danforth in your opinion an artistic antiquity?— A. I am not qualified to judge of that. It was a very nice table.

Interrogatory 51 propounded to Mr. Langhorn;

Q. Was this table number 4430, in your opinion, an artistic antiquity?—A. It is a very nice piece of antique furniture, but I cannot say it is artistic. I could not call a dining table of any sort artistic.

Interrogatory 37 propounded to Mr. Miney;

Q. Was this table in your opinion an artistic antiquity?—A. I would not like to say that about a dining table. You cannot call a dining table an artistic piece of furniture, but it was better than some of them. It was the best of its period.

The defendant cites *Mayers, Osterwald & Muhlfeld (Inc.)* v. *E. F. Bendler and United States*, 18 C. C. P. A. 117, T. D. 44093, wherein the question involved was whether an antique diamond was within the provision for artistic antiquities in paragraph 1708 of the Tariff Act of 1922. The court said:

It is very evident, from a consideration of said paragraph 1708, that by the term "artistic antiquities" the Congress had in mind something more than the mere ordinary work of an artisan. Associated as the term is with works of art, collections in illustration of the progress of the arts, works in bronze, etc., and other objects of art, it is the reasonable deduction that the Congress intended by the word "artistic" to include only antiquities which were the production of artists and which had an aesthetic appeal. In the congressional hearings on H. R. 7456, which afterwards became the Tariff Act of 1922, such showing as was made before the Senate Committee on Finance seemed to be upon the theory that the articles named in said paragraph 1708 were assumed to be the work of artists, as contradistinguished from that of artisans. (Senate Hearings, Part VI, pp. 5011–5028.)

Webster's New International Dictionary, 1925, thus defines the adjective "artistic":

artistic. a. Of or pertaining to art or artists; made in the manner of an artist conforming to, or characterized by, art; showing taste or skill.

One of the meanings attached to the word "artist" by the same lexicographer is:

artist. 3. One who professes and practices an art in which imagination and taste preside over the execution, esp. a fine art.

It is true that the same author also defines the word "artist" as having a meaning including one who practices some mechanical art or craft. It is equally true that in the ordinary use of the term in the language of the people, singers, actors, and others are alluded to as artists. We are convinced, however, that it was in the sense given by the above-quoted definitions that the Congress intended to use the word "artistic." This being true, something more is required to make an antiquity artistic, under this paragraph, than mere mechanical skill.

It would appear from a casual reading of the above excerpt that nothing can be considered to be an *artistic* antiquity which was not produced by a professional artist. It is obvious that, under that definition of artistic antiquities, all antique furniture would be excluded because it is a matter of common knowledge that necessarily furniture must be produced by means of tools and mechanical skill. That such a narrow definition of the term was not contemplated by Congress is

evidenced by the following provision in section 489 of the Tariff Act of 1930 wherein Congress provides for the examination of furniture described in paragraph 1811:

Furniture described in paragraph 1811 shall enter the United States at ports which shall be designated by the Secretary of the Treasury for this purpose.

Furthermore, in article 457 (*i*), (*j*), (*k*), and (*m*) of the Customs Regulations of 1937, directions are given for the examination of furniture classifiable under paragraph 1811.

Unlike the circumstances regarding the hearings before the Congressional Committees before the enactment of the Tariff Act of 1922, as reported in the quotation from the decision of the appellate court above copied, numerous witnesses appeared before the Committee on Ways and Means of the House of Representatives in regard to antique furniture when the paragraph providing for artistic antiquities was under discussion prior to the enactment of the Tariff Act of 1930. This is evidenced by an examination of pages 9704 to 9721, volume 15 of the Hearings in 1929 before the Committee on Ways and Means on H. R. 2667 which became the Tariff Act of 1930.

We are of opinion that it was the intent of Congress to include artistic antique furniture in paragraph 1811 and that the word "artistic" should not be construed in a narrow sense so as to exclude antique furniture on the ground that it was made by mechanical skill.

When asked if the table under consideration in this case was an artistic antiquity, witness Owen Evan-Thomas answered in the affirmative but qualifying his answer by the words "as far as any dining table can be artistic." Witness Langhorn said that it was a nice piece of furniture but "I can not call a dining table of any sort artistic." Witness Miney said: "you can not call a dining table an artistic piece of furniture, but it was better than some of them. It was the best of its period." It would seem that a table which has been in existence for over a century is artistic within the meaning of the provision in paragraph 1811 because it has an aesthetic appeal to those appreciating that branch of art. The affirmative testimony of witness Evan-Thomas, however, is sufficient to establish that the table was artistic.

We find that the weight of evidence establishes that the dining table herein involved is an artistic antiquity produced prior to the year 1830 and we hold that it is free of duty under paragraph 1811 as claimed, but we hold that repairs and replacements, amounting to £9 0s. 0d., are dutiable at 40 per centum ad valorem under paragraph 412, as entered and as classified by the collector. Judgment will be entered accordingly.